# Commonwealth v. Pedano

*Burton R. Laub*, assistant district attorney, for Commonwealth.

*George J. Biebel* and *Richard D. Agresti*, for defendant.

KITTS, J., October 24, 1938.—Salvatore (Sam) Pedano was arraigned before Lyle W. Orr, alderman, ex officio justice of the peace, in and for the fourth ward of the City of Erie, Pa., for a violation of the Act of April 22, 1794, 3 Sm. L. 177, 18 PS §1991, more commonly known as Pennsylvania's "Blue Law." See section 1, as follows, to wit:

". . . if any person shall do or perform any worldly employment or business whatsoever on the Lord's Day, commonly called Sunday, works of necessity and charity only excepted, or shall use or practice any unlawful game, hunting, shooting, sport or diversion whatsoever, on the same day, and be convicted thereof, every such person, so offending, shall, for every such offence, forfeit and pay four dollars".

He was fined in accordance therewith and appealed to this court for a ruling and an interpretation of this act.

It was agreed and stipulated by and between George J. Biebel and Richard D. Agresti, counsel for defendant, and Burton R. Laub, assistant district attorney, that on Sunday, December 19, 1937, defendant sold one pound of pepperoni and two cans of tomatoes to the prosecuting

witness, pepperoni being a type of sausage popularly relished because of its spicy flavor; that defendant owns and operates a grocery store wherein the alleged violation took place.

Defendant maintains that the sale of these articles of food constituted a "work of necessity" which is specifically excepted from the penalty of the said law; and that at the time of the enactment of this statute the legislature made mention of certain necessities such as the delivery of milk between certain hours on the Sabbath Day and the dressing of victuals in private families, bakehouses, lodging houses, inns, and other houses of entertainment for the use of sojourners, travelers, or strangers, and left within the discretion of the court the determination of other works of necessity. In other words, this court, by this appeal, agreement of counsel and stipulation, as mentioned above, is asked to rule as to whether or not the sale of foodstuffs, commonly called groceries, or, as the court sees it, the operation of a grocery store on the Lord's Day, does or does not constitute a "work of necessity" as set out in the section of the act quoted above.

The briefs filed by counsel in this case have been a great help to the court. We were highly informed by the learned assistant district attorney, Burton R. Laub, as to the origin and history of the Sabbath Day, and will quote from his brief, that the same may be perpetuated for a more complete matter of record in this court:

"Sunday laws were in existence long before the discovery of America. As early as 321 A. D., Constantine the Great issued an edict which commanded that 'all judges and inhabitants of cities must rest on the venerable day of the Sun'. Later, in 813 A. D., Charlemagne prohibited all buying and selling on Sunday.

"In England, in 1656 A. D., the Cromwellian Parliament passed an act forbidding the sale of articles on Sunday, and prior, in 858 A. D., we find the question arising when Pope Nicholas expressed his opinion that works

of necessity might legally and morally be performed on Sunday.

"During the middle ages, civil authorities exercised the right to legislate in all matters concerning morals and religion. On of the laws of Edward the Elder provided that, 'if anyone engaged in Sunday marketing, let him forfeit the chattel.'

"The first American Blue Law was introduced by the colony of Virginia in 1617, fully three years prior to the landing of the Pilgrims at Plymouth. This act provided for a fine, payable in tobacco, for the failure of anyone to attend church on Sunday.

"The first act of this type to find itself into the laws of this Commonwealth was enacted December 7, 1682. It declares: 'For the ease of creation, people shall abstain from their usual and common toil and labor, that they may better dispose themselves to read the Scriptures of truth at home, and frequent meetings of religious worship.'

"This was modeled after an English statute which was passed in 1676, which further required the people to 'exercise themselves in the duties of piety and true religion.'

"The present act was enacted as a direct result of the yellow fever plague of 1793 which ran rampant in Philadelphia. The plague was regarded as 'a scourge upon a wicked people.' The Pennsylvania legislature hastened to legislate away the wickedness of the people by shackling the devil in his most prosperous day."

Counsel for defendant readily admit that the selling of food or other groceries on the Sabbath Day does not come under the classification of "charity" but lay great stress on their argument that the sale of food or foodstuffs or groceries constitutes a "work of necessity" under the said act: in fact, their whole defense was predicated on this theory. None of the cases cited by the learned counsel for defendant rules directly upon this point, but many Pennsylvania authorities rule against the theory of this defense. Surely, the laying of a railway switch, which

was consummated and completed on one Sunday only, cannot in the opinion of this court settle the question of the sale of foodstuffs on every Sunday or, in fact, on any Sunday. The court did learn from the brief of defendants how to "dress a quart of ice cream." However, this was not a grocery store, but a shop where sandwiches, coffee, and ice cream were on sale in a house of entertainment: Commonwealth v. Carros, 4 D. & C. 761. There is no doubt that ice cream is a food, but in this case, relied upon by defendant, the court held that the sale of ice cream was not a violation because defendant operated a restaurant or eating-house for sojourners, etc., which was an exception to the said act. In our opinion, Commonwealth ex rel. v. Smith et al., etc., 28 Dist. R. 638, is not in point at all with the case at bar.

Counsel for defendant argued very strongly that this act is so antiquated and out of reason with modern methods of living and doing business that it can no longer serve any useful purpose on our statute books. Let us bear in mind that the Act of 1794 is, notwithstanding, a sacred and legal law on the statute books of this Commonwealth, albeit it has been there one hundred and forty-four years. Let us also remember that this act was passed by both branches of the State legislature, the State Senate and the House of Representatives, and signed by his excellency, the Governor, Thomas W. Mifflin.

We hold that this case is not in the proper tribunal for a redress of grievances, if grievances they be, but that such redress must or ought to be directed to the State legislature, which in our opinion is the proper forum of our government wherein this question should be decided. This court is not ready or willing to rule that the sale of foodstuffs or the operation of a grocery store on the Lord's Day is a "work of necessity." In fact, we find and so rule that the said Act of 1794, supra, is still legal and in full force and effect, of course with such exceptions as have been made by the courts or the State legislature;

and that the sale of foodstuffs or groceries or the operation of a grocery store on the Lord's Day, commonly called Sunday, is a violation of this act.

Mention was made by the learned counsel for defendant as to an adage used by the late justice of the United States Supreme Court, Oliver Wendell Holmes. No one has greater respect for the character, learning, and ability of the late justice than this court, and we heartily endorse his saying: "When the reason behind the rule ceases, the rule itself must cease." But we are of the opinion that had this question ever been referred to the late justice for comment thereon, the paper would have found its way into one of the pigeonholes of his proverbial roll-top desk, marked in his own handwriting, "Refer to the Pennsylvania State Legislature."

It appears from stipulation, etc., that ten other grocers were arrested at the same time with this defendant, charged with the same violation, and that their cases were held in abeyance awaiting the decision on the Pedano case. Considerable was said about the fact that one of these defendants while being a complaining party was also charged as a violator of this particular statute. We are of course sorry that such a situation has arisen and that one group of merchants would be charged with trying to control the business of the City of Erie and, more ostensibly, that there is a clique, so-called, attempting to drive the little fellow out of business. This has no bearing on the court's decision, and these circumstances have not been considered in any way, shape, or manner, in arriving at the conclusions expressed in our opinion. In view of the agreement of counsel, of course this court can make no order on these other defendants, but it is inferred that their counsel will notify them to promptly appear before Lyle W. Orr, Alderman of the Fourth Ward of the City of Erie, for sentence according to law.

And now, to wit, October 24, 1938, defendant Salvatore (Sam) Pedano be and is hereby adjudged guilty of the violation of the Act of 1794, in that he did sell food

or foodstuffs, viz., one pound of pepperoni and two cans of tomatoes, on the Lord's Day, commonly called Sunday, to wit, on December 19, 1937, and the said defendant shall forthwith appear before this court for sentence.